JULIA ESTHER CHAVES, demandante y recurrida, *v.* COOPERATIVA DE CRÉDITO DE ISABELA, demandada y recurrente.

*Número:* R-73-179    *Resuelto:* 28 de mayo de 1975

*Calixto Calero Juarbe* y *Sonia M. del Valle Rivera,* abogados de la recurrente; *M. Martínez Umpierre,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

La señora Julia Esther Chaves trabajó por cerca de ocho años como administradora de la Cooperativa de Crédito de Isabela. Las condiciones de trabajo se hacían constar en un contrato escrito cada vez que se convenía un aumento de sueldo. El último de dichos contratos fue suscrito el 30 de junio de 1969. Ni en éste ni en los anteriores se especificó el término de duración del contrato. La última de sus cláusulas dispuso:

"La Junta [se refiere a la Junta de Directores de la Cooperativa] evaluará la labor de administración periódicamente. También revisará este contrato cuando así se amerite."

La Junta de Directores de la Cooperativa, en reunión celebrada el 12 de agosto de 1969 en que estaba presente la señora Chaves, decidió prescindir de sus servicios a partir del 31 de agosto de 1969 y así se lo notificó. Ello dio lugar a actuaciones de una y otra parte que culminaron en la formulación de demanda por la señora Chaves y de reconvención por la Cooperativa. Alegó la demandante que, aunque no se dispuso en el contrato, se pactó un término de dos años de duración. Reclamó $11,500 por el tiempo que, según alegó, le faltaba para completar los dos años, y reclamó $1,649 por concepto de compensación por vacaciones acumuladas. La Cooperativa reconvino por $15,000 en daños que alegó le causó la demandante. El tribunal de instancia declaró con lugar la demanda y condenó a la Cooperativa a pagar a la demandante $980.76 por vacaciones, y $11,000 por incumplimiento de contrato, más costas y $500 de honorarios de abogado.

La Cooperativa ha recurrido ante nos. Por resolución de 10 de abril de 1975 concedimos quince días a la demandante recurrida para mostrar causa por la cual no debíamos revocar la sentencia. Ha comparecido mediante escrito que quedó radi-

cado aquí el 9 de mayo de 1975. Lo hemos leído y considerado detenidamente pero no nos convence.

■ Nuestro estatuto sobre las pruebas adopta en el Art. 25, 32 L.P.R.A. sec. 1668, (¹) la llamada regla de la prueba extrínseca, que excluye prueba oral de condiciones de un convenio hecho por escrito, fuera de las estipuladas en el escrito. Comentando ese artículo señalamos en *Collazo* v. *Conesa*, 70 D.P.R. 155, 164 (1949):

"El principio establecido por el artículo 25, supra, es harto conocido. En derecho americano se le describe con el nombre de *parol evidence rule*. La teoría en que se basa no es meramente que el documento constituye la mejor evidencia de lo acordado, sino que su contenido representa el verdadero contrato entre las partes, no siendo admisible prueba oral para variarlo excepto en los casos provistos en el citado artículo."

■ Esta regla, como se dijo en *Morales* v. *Díaz*, 24 D.P.R. 739, 743 (1917), "es algo más que una mera cuestión de prueba," y su naturaleza sustantiva como parte de la teoría general sobre obligaciones y contratos quedó allí reconocida al decirse, en la misma pág. 743: "La mayor parte de la prueba podría haber sido excluida de acuerdo con esta regla, pero aun cuando fuera admitida la corte tenía derecho a considerarla como que no era prueba." Véase, a este efecto, la presunción incontrovertible establecida en el Art. 101 de la Ley de

---

(¹) Dicho artículo dispone:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

2. Cuando la validez del convenio constituyere el hecho controvertido.

Pero esta sección no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en la sec. 1671 de este título, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes."

Evidencia, 32 L.P.R.A. sec. 1886 en su segundo inciso. Compárese *Carrión* v. *Meléndez Caballer,* 97 D.P.R. 357 (1969).

Los hechos del caso ante nos no justifican recurrir a las excepciones que el propio Art. 25, antes citado, establece para la admisibilidad y para la ulterior consideración de prueba extrínseca al contrato escrito. Por el contrario, las circunstancias reflejadas por la prueba eliden todo intento de conceder mayor eficacia a la aseveración, no corroborada, de la demandante de que "según las conversaciones con la presidencia y un comité de contacto que había establecido, se estipulaba que era a base de dos años y podía ser renovado anualmente." (Pág. 20 de la transcripción de la prueba oral.) Si el contrato era por dos años ¿cómo podía ser renovado "anualmente"?

El propio contrato, en su última cláusula, antes transcrita, desmiente todo intento de incorporarle por prueba oral la condición de dos años de duración, al reservarle a la Junta de Directores la potestad de revisarlo a su discreción. El testimonio del presidente de la Cooperativa, Dr. Carlos Chaves, fue terminante al negar la alegada condición y, para mayor abundamiento, las actas de la Junta de Directores no revelan que se autorizara un contrato de dos años de duración.

Excepto en cuanto a la obligación de la Cooperativa a pagar a la demandante la cantidad de $980.76 por concepto de vacaciones acumuladas y las costas, *se revocará la sentencia del tribunal recurrido.*